Good morning, Your Honors. Good morning. May it please the Court. My name is Noah Golden-Krasner. I'm a Deputy Attorney General for the California Attorney General's Office, and I'm here today representing the people of the state of California and the California Coastal Commission. I am also here arguing for the Animal Legal Defense Fund, the Center for Biological Diversity, the Sierra Club, and the Defenders of Wildlife. I'd like to reserve five minutes for rebuttal. Before I get into the details of this case, I'd like to remind Your Honors what this case is about. On January 25, 2017, the President issued Executive Order 13-767, directing the Department of Homeland Security to build an impenetrable barrier across the southern border. The first part of building that barrier was the prototype projects and the new fence designs in San Diego and Calexico that are a part of this case. In order to build those barriers, the Department of Homeland Security wanted to use Section 102 of the Legal Immigration Reform and Immigrant Responsibility Act, what I'll call Section 102. The problem is that Section 102 was never designed for that purpose. The District Court held and DHS argues that Section 102-C2 acts as a jurisdictional bar. However, if we read Section 102-C2, it states, in general, the District Courts of the United States shall have exclusive jurisdiction to hear all causes or claims arising from any action undertaken or any decision made by the Secretary of Homeland Security pursuant to Paragraph 1. Paragraph 1 is the waiver authority. By its terms, therefore, Section 102-C is the jurisdictional bar is anything arising from that waiver decision. Arising from the waiver decision does not include independent predicate questions. Right. So you, at the time in the District Court, you brought both constitutional and non-constitutional claims, correct? Correct. The constitutional claims are not before us right now. That's correct, Your Honor. So you're talking about doing a petition for cert on those or something. So, you know, if, I mean, obviously we have to do statutory construction here as far as that goes. And 102-C2-C says that any District Court order, any District Court order, not just a final one, it doesn't say any District Court order, may be reviewed only upon petition for cert to the Supreme Court of the United States. All right. So you ask us to read it narrowly. They ask us to read it broadly, as it were. But why doesn't the plain language just support the federal government's view when you consider the whole backdrop of everything? Obviously, people can debate a lot in terms of, and there is a lot of debate on this issue, as we know. And the state of California doesn't see it the same as the federal government. And a lot of citizens don't all see it the same. But that being said, I think possibly on some level, the borders are a security issue. People debate as to how much of a security issue or what the answer should be. But that being said, if they are a security issue, and we all know that if we go to And so it looks like this, what the point of this was, okay, where you have a security issue, we don't want it tied up in court forever. And we don't want it tied up in the circuit courts, where they have en banc review or whatever. We want things to go to the District Court on constitutional claims or whatever, and whatever that goes there. And then we want it to go directly to the Supreme Court and just get it done. So it cannot be in a mire. And so why isn't that what this is about? Well, Your Honor, if we look at the history of what's gone on, whenever back in 2005 to 2008, when DHS last used this authority, it always boiled down to Section 102B. And if you look at all the 370 miles and the 700 miles I was talking about there, when the Secretary at that time was using, there was no question that he or she had the power to build those barriers in the first instance. And therefore, the holdup at that time would have been as to the waiver authority. And that is why Congress amended it to not allow those claims to be brought to this authority to build these barriers in the first instance. And those were not an issue back when Congress's intent was clear and DHS was clearly doing what Congress intended them to do under Section 102B. So let me, I think Judge Callahan misses a step there in terms of reference to Paragraph 1. And it seems to me that the whole jurisdiction is predicated on what arises out of Paragraph 1, which is a waiver. So now I want to walk you through the different claims and see if they may or may not be distinguished. So number one, you represent Center for Biological Diversity, as well as the California, is that correct? Today, I'm arguing for them, yes. So as I understand it, that organization filed its complaint before there was a waiver, correct? Is that the FOIA complaint you're talking about, Your Honor? Environmental complaint. Okay, yes. Well, do you know, are you familiar with the time? I'm not 100% familiar. I know that the... It's going to be productive for me because it's an important thing to see jurisdiction determined, of course, at the filing of the complaint. We have three consolidated complaints here. We have different complaints at different times. So maybe I'll ask the United States about that because... You might want to check on the rebuttal because I see a head nodding at the table. Yeah. So I mean, without... That is one kind of complaint that was nodded before there ever was a waiver. And as I understand it, there are a number of times when the Department of Homeland Security has built various barriers where there was not a waiver. Is that true? That's correct, Your Honor. So we can't assume there will always be a waiver. I mean, the waiver is if there is a waiver. Okay. So as I understand your complaint, it's that you don't even get to the waiver because, in your view, the statute doesn't even permit the project. Is that right? That's correct, Your Honor. Okay. So if that's true, that you say it doesn't permit the project, you call that a predicate legal issue, correct? Yes, an independent question. So let's say we agree with you on that point. And when you look at the predicate legal issue and we say, well, there's jurisdiction here, but you lose because, in fact, this combination of 101 and 102 does permit this project. So then wouldn't we move from there, if that were a foundational determination, then, of course, ultimately there is a waiver in this project, correct? Correct. And wouldn't we then invoke the waiver provision at that point? Well, the waiver determination will, well, the district court's ruling on the waiver determination, the district court already made a ruling, and that has to go to the United States Supreme Court. Correct. So, but if, Your Honor, it's fine that, in fact, the building of these barriers is allowed under section 102, then, yes, the Department of Homeland Security would be allowed to use the waiver unless the Supreme Court says otherwise. Okay. So, Your Honor, so let me just, if we take the first part of your proposition that the authority to build is not, is really independent from the waiver, so you've got to know whether you can, you know, fire the gun in the first place to get the project moving. If, in fact, the project is allowed and we determine that it's allowed under the statutory construction of these particular sections, then where does that leave you? That leaves us with bringing a cert for petition if we decide to. In the Supreme Court. In the Supreme Court, or as to this court's decision on that, on that statutory construction. So, in your view, that if, and if we were determined that it's not permitted, then we would march through. All the environmental issues, right? Correct. Okay. So, in your view, the predicate legal question only gets you somewhere if you win on that, is that right? At least it doesn't get you anywhere in this court. You need to ask the Supreme Court. Correct, Your Honor. Right. And I think it's important to realize that we're talking about two different grants of authority, as we've discussed, and one would be the authority to build, and the second would be the authority to waive laws. Right. So, DHS next, if we put it, put aside, once the statutory bar is put aside, DHS next argues that it has Chevron deference in this case, and of course Chevron would be a two-step process. And that really goes to the authority question? That goes to the authority question. Correct, Your Honor. And the first step of Chevron is whether the statute is clear and Congress's intent is clear. And in this case, we have 102A, which is, as the title states, it's a general statement, and 102B contains all the instructions and the details for how to carry out Congress's intent. So if we look at 102B, 102B1A and 102B1B are the mileage requirements, the 700 miles and the 370 miles. 102B1C is the consultation clause. 102B2, 3, and 4 are the easements, the safety features, and the authorization for appropriation. And what's important in B2, B3, and B4 is that Congress states, pursuant to this subsection, clearly talking about section 102B, and DHS is claiming that its case basically boils down to that it has authority under section 102A to build these carrying out. When it says in carrying out, it's meant to guide and limit the authority of DHS. And those safety features... What's your best authority for that? I read these, there are two independent sections. One offers some specificity on certain things, but it doesn't somehow cut off the 102A authority. So maybe I'm missing something. Do you have, what is the best proposition for that limitation? 102A provides a general proposition, and it says, shall take such actions as may be necessary to install additional barriers. But it's 102B that contains the congressional details and the congressional... Right, but your argument is that the language in carrying out subsection A somehow is indicative of a restriction on the general grant of authority under subsection A. And so I didn't see any for that proposition. As Judge McKeown asked, do you have any authority that would support that reading of being carrying out language? Yes, Your Honor. Well, I believe that the Radlocks case and the Bloat case in the Supreme Court, those are cases that talk about how the general should not make the specific irrelevant. And if 102A was this general grant of authority to be able to build whenever, wherever, and however in perpetuity, then there would be no need for section 102B. Well, 102B is not rendered irrelevant if we read it in order to suggest congressional intent that 102B is an articulation of priorities that Congress wants DHS to focus on. Isn't that a natural reading of these two sections when you read them in tandem? Well, I don't believe so, Your Honor. I believe that when Congress uses the terms in carrying out subsection A and in carrying out this section in 102B1B, that it is giving details on how DHS would in fact meet Congress's goal. That if DHS were to build the barriers that Congress instructs them to build, that they would in fact meet that purpose of 102A. And maybe I'm missing something, but it seems to me that 102A would be superfluous really if 102B is the be-all and end-all. And so I read it as saying, okay, you can construct all kinds of physical barriers to make sure that there's obstacles to, you know, that you don't have you must do what's in B. You shall build this, you shall do that, you shall do this. It doesn't anywhere say you shall only do this and that. That is laid out in 102B. So that's where I'm having a statutory interpretation collision with your view. Well, if 102A were the only were by itself and there was no 102B, then I would agree, Your Honor. But 102B gives context to 102A. And in fact, it provides that the attorney general can get easements. It says that safety features can be done. And it says it provides for appropriations. But those are only under subsection 102B. So if it was 102A solely, Your Honor, the DHS would not have those authorities that Congress clearly intended the DHS to have to provide those safety features to get the easements, to have the appropriations. And in fact, DHS pulls in the consultation clause from 102B and admits that that is subject to 102A. And I just don't see how 102A can be seen by itself. I think the statute needs to be read as a whole. Yes, of course. 102B talks about the southwest border. Of course, we have two other borders. We have a Canadian border and we have maritime borders. And so my question is, doesn't 102A permit you to do various things in the maritime and the Canadian border that are different than the specificity ordered on the southwest border? Well, that issue is not in front of us. They're not attempting to build along the... It's a statutory interpretation. Yes, well... I know they're not doing it now, but we do have borders. We do have border controls with Canada. Right, well... And so my question is, if the Secretary of Homeland Security decides to enhance or reinforce various borders in the north part of the country, as opposed to the southwest, why wouldn't section 102A be invoked? I don't believe that that was Congress's intent. If you look at Senator Kyle's comment, he said, well, we're not going to build barriers across the entire border. And I can't... But I wouldn't jump to Senator Kyle if the language is clear and unambiguous in 102A. I wouldn't jump to the legislative history. Yes, well, when you look at 102A and it talks about areas of high legal entry and the need to deter illegal crossings, that is... As it's linked to and carrying out subsection A and 102B, it's clear that Congress was talking about the southwest border at the time that it enacted this. And in fact, it's amended it from time to time to add sections along the southwest border. You want to save your remaining time? Yes, Your Honor, I would. Thank you. May it please the Court. Thomas Byron from the Department of Justice for the government. This case really demonstrates that the plaintiff's claims are in the heartland of the purpose of Congress's enactment of the jurisdictional bar in 102C. That was adopted in 2005 following the earlier enactment in 1996 of the statutory authority that's at issue here. And in 2005, Congress expressed its concern that ongoing litigation delays had resulted in delays in completing the original 14 mile San Diego project that had been Congress therefore adopted a broad waiver in 102C and didn't limit it just to the waiver because that limited waiver had previously been adopted but was not deemed effective. Instead, Congress specifically imposed a very clear and very specific jurisdictional prohibition against these kinds of claims the plaintiffs are bringing. Just so that I understand the government's position. I mean, you tear it, obviously. The first position and what you believe is the correct interpretation is this should be dismissed because this Court has no jurisdiction. Is that correct? Yes, Judge Gellin, that's right. All right. And you in the district court, is it also, is it your position that this court has no jurisdiction over both? The district court has jurisdiction over constitutional claims but not non-constitutional claims. Is that correct? Yes. And then constitutional claims have to go to the Supreme Court, but it's also your position that non-constitutional claims, that the district court would not have had jurisdiction in the first place. And I think the district court found it didn't have jurisdiction, but said, anyway, I'm going to double barrel it and I'm going to go through the analysis. Is that correct? So I think that's mostly right, Judge Callahan. The district judge here concluded that the language of the jurisdictional bar was not as clear as we think it was and therefore didn't preclude the ultra viris claims that the plaintiffs were also raising, that the secretary's action here exceeded the statutory authority. And so the court then went through the lead them against kind analysis for ultra viris review. So if the district court had jurisdiction to review the plaintiff's non-constitutional claims, is the proper standard, whether the projects are ultra viris under lead them exception or whether they are arbitrary and capricious or at abusive discretion under the APA, what is the proper standard from your perspective and what difference does it make in this case? So let me start with the last question, Judge Callahan. It doesn't make any difference at all because however you look at these statutory questions, this case really is, as I said before, about the heartland of what Congress was getting at in 102 generally. So whether you look at it under the APA standard, under just de novo review, if there were any basis for that, there's obviously not. Under Chevron, under the APA, under lead them against kind, there really is no question that the actions at issue here are clearly within 102A's grant of general authority. Even if there were any questions. So why don't we have jurisdiction or the district court to look at that, what I'll call the threshold or they call the predicate question. And if you take that as a predicate question, because it's unhinged from a waiver, I mean maybe there's no authority to do this. Let's say they think it exceeded authority because of the way they interpret, as we just talked with them about the 102, 201 and I mean 102, et cetera. But if we say, well, we have jurisdiction to look at that because it's really a predicate question that doesn't really arise from a waiver in paragraph one. And then we determine that there is authority in the way we read these statutes together. Counsel has said that, well, once that happens, once you have the authority, then you are in waiver land and their recourse, further recourse would be in the Supreme Court with cert. Why isn't that a logical reading of the statute? Or why isn't that a logical way to look at jurisdiction? So Judge McKeon, let me start by just saying that as in Flores-Miramontes, this court concluded that there's always, the court always has jurisdiction to determine its own jurisdiction. That's what the predicate legal question inquiry is all about. So in that case, in Gephardt and I'm going to mispronounce the other third case they rely on about predicate legal questions. But in all of those cases, this court started with the language of the jurisdictional bar to determine what sort of predicate legal questions are appropriate. So let me just say, setting aside the argument that we think is pretty clear that the language of this statute is so clear that there is no room under M Corp even for a lead-them-against-kind or a predicate legal question. You only want to win on your terms, in other words. No, Your Honor. Judge McKeon, as I said to Judge Callahan a moment ago, we would win under any inquiry, any of those steps. So let me just then address the question about predicate legal questions, because I think it goes... Before you do that, can you answer the second part of Judge McKeon's question, which is focusing on essentially the plain language of the jurisdictional part bar in subsection C? Because it seems to me that your argument doesn't give effect to the reference to paragraph one, right? Because essentially the district courts of the United States shall have exclusive jurisdiction to have all causes or claims arising from any action that's undertaken pursuant to paragraph one. Yes. So then we say, okay, well, paragraph one, Congress intended for us to look at paragraph one. And when you look at paragraph one, that's the waiver provision. Yes. So your argument answered the question in part, but it doesn't talk about the subparagraph one reference. So I appreciate you reminding me about the language. So let's turn to the language of the jurisdictional prohibition in 102C2A, which says that there's no jurisdiction to hear any claim not specified. And so, as you say, the language then refers back to any causes or claims, all causes or claims arising from any action undertaken or decision made pursuant to paragraph one. Pursuant to paragraph one then dictates the scope of that predicate legal question inquiry. And we think that there are two questions posed by paragraph one. The first is, did the secretary invoke the section 102C1 authority? And in both waivers, she and then she did so, and he did so in the earlier one. And then the second question is whether the secretary had determined that it's necessary to ensure expeditious construction to waive the specific legal requirements. And again, both Federal Register notices make that determination. Those that we think are the appropriate predicate legal questions. If the plaintiff's argument would have the court go beyond that predicate legal question inquiry and say, not only did the secretary invoke the waiver under C1, but did the secretary properly do so? All right. So that begs the question, because what you have is you have a project. And the question is, is there authority for the U.S. government to enter into this project? And if there is, then Congress, with its combination of the 2005 and 2008 jurisdictional waivers and jurisdictional statute, says, then you can waive any law related to those projects. But that doesn't answer the question. You need to get to the waiver in paragraph one for that to be the answer. And so, as Judge Winn is suggesting here, what we're talking about, and maybe predicate isn't the correct term, but as a foundational legal question, do they have authority to have the project at all? And if there was no authority to have the project at all, the waiver is kind of non-icing on the cake, right? I don't think so, Judge McKeon. So let me just see if I can back up for a moment and start from the sort of the first step, which we think is important to look at. The language of 102c2's jurisdictional bar is really broad, and it's very specific. And so we think that these are claims arising from actions taken, because the claim that there's no authority to undertake the project at all is a claim that the project violates the cause of action for that. And the only cause of action available here is under the APA. But remember, the APA itself precludes actions that are precluded by statute, and that's what this statute does. So I understand your concern that- So let me give you a specific, and that is that we have three consolidated cases here. And my understanding is the Center for Biological Diversity filed its challenge to the environmental statutes before there was ever any waiver. And we do know from looking at public records and historical records that a number of these projects have proceeded without a waiver, and there was just general litigation in the courts over A, B, C, or D, some of which were environmental claims. On the other hand, so the secretary doesn't always, it's not like a mandatory waiver, it's if the secretary decides she wants to have a waiver. So let's just take the Center for Biological Diversity. With jurisdiction being determined on the day of filing, which is when we would determine jurisdiction, at that point there was no waiver at all. So Judge McKeon, you're right that the original complaint was filed in July of 2017, and the first waiver was published in the Federal Register on August 2nd. But the important thing to remember here is that the operative complaint, the complaint that's currently operative, is the second amended complaint, and that was filed in September. No, but doesn't that, you know, the jurisdiction relates back to the filing of the original claims, the basic civil procedure. I know they now have a new complaint because they don't like the waiver, but I'm asking you, you don't look at jurisdiction based on an amended complaint if there was jurisdiction under the original complaint. So Judge McKeon, if they were stuck with the original complaint, they would lack both standing and ripeness. The case was not justiciable in July. Well, that doesn't mean there's no federal jurisdiction. It just means that they are out of court on a non-judiciability ground. Well, actually, Judge McKeon, I think it is a jurisdictional point, but it's a different jurisdictional point to be sure. It's a different jurisdictional point. Absolutely. I agree with that. And they could have been thrown out, possibly, at that point. But let's take, let me see if I can take a different tack to try to answer your question, which is that if the plaintiffs were right, even looking back at their original complaint, if they, again, if they were stuck with that, the answer would be that once the waiver had been promulgated, it would be effective. That's what 102c1 says. It's effective upon publication. And the Federal Register acts as the court can take judicial notice of what's published in the Federal Register. It then is operative, and then that precludes any inquiry as a matter of substance. Then the only avenue for plaintiffs remaining at that point is to argue that the waiver itself is somehow invalid. And remember, that really is their core argument here. That's what this case ultimately comes down to. Well, ultimately, but there's, you know, there wasn't a waiver then, there isn't always a waiver. So you're trying to shoehorn what happened here into the broad statute. And so my question, which I wanted to ask California, but I'll ask you, if it were determined that the district court had jurisdiction at the outset, because of normal jurisdictional determinations of arising under a Federal statute, and there is no waiver in effect at the time of filing, but then there is a waiver in effect at the time of appeal, then my question is, well, maybe there was jurisdiction in the district court to proceed, but now we're into what can be appealed from the district court order. So then perhaps we shift to the jurisdictional bar. Does that make some sense to you? I think it does, Judge McKeon, and I think it's actually a good reminder that in two previous instances, waivers were adopted, promulgated by the Secretary of DHS, I should say, and after litigation had been commenced, and they were deemed by the district courts in both of those cases in 1997, in the case challenging the San Diego fence, and in 2005 in DC district court, both were deemed effective to require dismissal on jurisdictional grounds at that stage. At that stage. So your hypothetical is a little different. It's on appeal, but I don't think the outcome would be any different. But in terms of, the outcome could be the same in all of this, but I'm trying to follow the presumption that you don't strip jurisdiction and you read the statute for what the statute says. So if you go back, the 2005-2008 restrictions were enacted under President Bush, correct? Yes, that's right. And since then, some cases have waivers, some cases don't have waivers. That's right. And we're looking now at an executive order of President Trump, and then we have a waiver in these cases. We have a current waiver in these cases, correct? So Judge McKeon, you're absolutely right. This case is about two specific waivers. The history you mentioned, I'll say two things about it, if I may. First of all, this case is not about a challenge to the executive order broadly, as plaintiffs suggested in their opening. It is about the challenge to three particular projects, one of which is completed, so two remaining, and two particular waivers. Going back to the history though, the examples of some projects resulting in waivers and others not is an example of the discretion, the express discretion granted to the Secretary in C1. If you look at the legislative history, and I would commend the court to look at the 2009, which is included in our supplemental excerpts of record, really goes through a lot of this and confirms the reading of the statute that we've emphasized. But if you look at that, the House bill in 2005 originally compelled the Secretary to waive laws necessary to ensure expeditious construction. That was amended before it was enacted and provided this express discretion. So the importance of giving the Secretary the express discretion to determine whether and when it's appropriate to waive any particular law is really, again, at the core of this statutory power. Let me ask you this, if you had, let's say they are correct on 102B being a limiting authority, just hypothetically, let's talk about that. So that would mean that as a matter of statutory construction, the government didn't have authority to proceed with this project because it didn't fall in a certain box. Okay. Under your, I'm just, that's the argument. I'm struggling with the premise, but I'll proceed. That's their argument. 102B has this constricting force. Right. Okay. So take that as a given. And if that's the case, and that's not a constitutional question, you would end up with a situation, hypothetically, if they were right on this or some other project, that there would be no review of that because it's not a constitutional question and it's not a waiver, even a waiver question, no matter how broadly you waive it. So that's why I'm having some struggle with the process of how you read section one, because you could end up in that, that would be a complete jurisdiction stripping, which I don't think Congress intended that. I think what Congress intended is pretty clear here is that when you get to the, in one of these projects, once you have authority to have a project, then if the secretary wants, he or she can waive all laws, not just environmental, I think it says all, is that correct? That's right. So there's a lot of other laws out there. All legal requirements. All legal requirements. In fact, that also was changed from laws to all legal requirements. Laws to all legal requirements and not just environmental laws. So that would mean that you, this would never be reviewed whether you had the right to proceed with the project in the first place. And I don't think there's anywhere in the legislative history that suggests that the courts are stripped completely of jurisdiction of that non-constitutional question. So Your Honor, I think you're right that the legislative history doesn't get to that specific inquiry, but the language of the statute, again, is extraordinarily broad and very clear. But let me also just point out that what the proper remedy is, this is a question ultimately left to the political branches. And that's why Congress carved out judicial review to ensure that ongoing dialogue between Congress and the executive would ensure the appropriate use of this statutory authority. And the specific example I'll give, if I may, is that the Congress in these, for these most recent projects in FY17, specifically identified these projects, the category of these projects, in the appropriation of funds. And the plaintiffs have also raised prematurely, as we point out, a challenge to a project that has not yet been subject to a waiver, has not yet been undertaken. And the reason for that is because that had not yet been the subject of an appropriated, appropriation of funds. That was only most recently done in the FY18 bill passed this spring, spring of 2018. So Congress and the executive are engaged in a meaningful ongoing dialogue about this question, about which project. I guess I need permission from the presiding judge to ask a few questions just to understand that if that's okay. So I'm trying to appreciate if there is a carve out here that would not be reviewable. And if it would be your position that there can be a part that's not reviewable and still withstand scrutiny. And so I understood if the secretary were to adopt either project without waiving all constitutional requirements, would plaintiffs be able to challenge that project anywhere in civil actions in the federal court? So, Judge Callan, I think that starting from first principles, if there were a project without, a 102A project without a waiver, as there have been, as we've talked about, then the plaintiffs would need to identify a cause of action, a statutory violation, 1331 presumably would be their jurisdictional basis. They'd have to demonstrate standing, rightness, all of the ordinary principles for bringing a legal action, bringing a claim in court, right? And that is how we think it would proceed. But if it's non-constitutional under your interpretation, could they ever bring that in federal court, in district court? Can I just ask to clarify your question? Are we in a world where there is a waiver or one where there has not been a waiver? Where there's not a waiver. Where there's not a waiver, yes, Your Honor. Presumably to the extent that a statute such as NEPA, I see I'm over, but I'll continue. No, I want you to answer the question. Sure. Go ahead. If NEPA or the Endangered Species Act or the APA were to apply to a particular project, and there are predicate questions there, after all, I don't mean to use that language. There are important questions to ask. Has there been final agency action? Has there been an irrevocable commitment of resources? All the ordinary questions one has to ask. But sure, if those questions can be answered and plaintiffs can demonstrate they have a claim, that's the kind of claim that those statutes ordinarily would contemplate. The work that the waiver does is it precludes judicial review of any claim that's based on a statute that's been waived. Can I ask a question as well? Just to make sure. Now, you had indicated that even though the Center for Biological Diversity complaint was prior to the invocation of the waiver, once the waiver is invoked by the Secretary, that sweeps in the allegations in the complaint, right? In that particular complaint. Well, I think, Judge Winn, if I could try to clarify the way I think it should work in that circumstance. And again, here we're a little bit different because there were amended complaints afterward. But let's just imagine there wasn't. Well, that was going to be my next question. Would it make any difference if the complaint had not been amended? So I don't think it's... Is the sweep of your interpretation of 102C broad enough so that you can file a lawsuit having viable claims because the waiver had not been invoked? A year into the litigation, the waiver is then essentially published in the Federal Register. Then the waiver would operate to sweep in the claims in a previously filed complaint as well. Is that your interpretation of the breadth of 102 subsection C? Yes. And let me see if I can go through the steps to show why that's so and refer in particular to the 2005 D.C. District Court case, which was an example of this, as I was explaining to Judge McKeon earlier. So a plaintiff brings a claim based on NEPA, Endangered Species Act, a variety of other statutes. I don't remember exactly which ones were in play in the D.C. 2005 case. At that point, after the claim is brought, the Secretary invokes the waiver authority, issues a waiver, waiving the very statutes that were at issue in the litigation in that case. The District Court, by the way, in that case had already entered a preliminary injunction, if I recall correctly. It may have been a TRO, but I think it was a preliminary injunction. The District Court, upon seeing the waiver, we provided it to the Court, upon seeing that the waiver had been issued, vacated its injunction and had briefing about whether to dismiss the case, concluded that it lacked jurisdiction and did dismiss the case. So that's an example of how we think that it should work and how Congress intended that the waiver authority and 102C's jurisdictional bar would operate. Thank you. Thank you, Your Honor. Your Honor, I'd like to make two points. One, I do believe that DHS is reading the words arising under out of the statute. This Court has found in JEFM v. Lynch, Aguilar v. Ice, Flores-Torres, Flores-Miramontes and other cases that arising under does not include independent predicate questions. Now, theoretically, we could have brought two separate lawsuits, one challenging the authority to build and one challenging the waiver authority. And then, I guess there would be no question about whether we're talking about two distinct issues here, two different grants of authority that would not be swept under the waiver. My second point relates to the 102A issue that we were talking about earlier. And it's also our contention that if you look at 102C, 102C talks about in relation to the waiver authority, it talks about the need to finish the projects quickly and expeditiously. And we believe that if you look at 102B1B, when it says in carrying out this section, the section as a whole, that it provides a timeline to finish 370 miles of construction within one year, by December 31st, 2008, and separately provides that the Secretary has until December 31st, 2008, to identify mileage to be finished quickly, expeditiously. And I believe that it's important to remember that there's a separate authority there. There's some authority that is granted that ends on December 31st, 2008. According to the DHS's reading of the statute, what would be different about January 1st, 2009? The Secretary would still have power to name any project that it wants, anywhere that it wants, on the southern border, and waive laws. So what is that authority that ends on December 31st? And it's our contention that on January 1st, 2009, the authority to identify mileage for expeditious construction is what ends there. And that's what makes January 1st, 2009, different than December 31st, 2008. So even if we assume that Section 102A provides authority to build, the waiver authority, as Congress intended, was meant for expeditious construction. It was meant for construction that needed to be done within one year of the statute's enactment, and that authority that ends on December 31st, 2008, means something. And January 1st, 2009, is, in fact, different than December 31st, 2008. Thank you. Thank you, Your Honor. The case just argued. The Center for Biological Diversity versus Homeland Security is submitted. I'd like to thank both counsel for your briefing and argument, and with that, we're adjourned for the morning. All rise.
judges: McKeown, Callahan, Nguyen